Ruth H. BUNN, Executrix of the Estate of Clair V. Bunn, Deceased, Plaintiff,

v.

CATERPILLAR TRACTOR COMPANY, a corporation, Defendant,

v.

ACE DRILLING COAL COMPANY, a corporation, Third-Party Defendant.

Civ. A. No. 74–637.

United States District Court, W. D. Pennsylvania.

June 16, 1976.

John Evans, Jr., Evans, Ivory & Evans, Pittsburgh, Pa., for plaintiff.

Robert Grigsby, Thompon, Rhodes & Grigsby, Pittsburgh, Pa., for defendant.

Carl W. Brueck, Jr., Brueck, Walker & Brueck, Pittsburgh, Pa., for third-party defendant.

## OPINION

SNYDER, District Judge.

Presently before the Court is Plaintiff's Motion for New Trial for alleged errors which occurred during the Trial and in the Court's Charge. The Motion will be denied.

## I. BACKGROUND.

This action arises out of a claim for damages for the death of Clair V. Bunn on

October 11, 1973. Bunn, a supervisor for Ace Drilling Company (Ace), was directing coal loading operations at Ace's Lilly Loading Dock when he was run over by a Caterpillar 988 Front Wheel Loader, manufactured by the Defendant, Caterpillar Tractor Company (Caterpillar). The machine was originally sold to Cecil I. Walker Company of West Virginia on January 28, 1969, but at the time of the accident it was owned by South Fork Equipment Company, who had leased it to Ace.

Ruth H. Bunn, wife of the deceased, brought this action alleging that the 988 was defectively designed at the time it was sold by Caterpillar since it was not equipped with adequate safety devices (specifically, rear view mirrors and a backup alarm) and the exhaust pipe and air precleaner mounted behind the driver's seat obstructed the view of the driver to the rear.

The case was tried before a jury which answered the first special interrogatory [1] as follows:

1. The Special Verdict Slip submitted to the jury read as follows:

"1. Was the Caterpillar 988 Wheel Loader in a defective condition at the time it was sold by Caterpillar Tractor Company to Cecil I. Walker Company, West Virginia, on January 28, 1969?
    ANSWER 'YES' OR 'NO': ___
IF YOUR ANSWER TO QUESTION NO. 1 IS 'YES', ANSWER QUESTION NO. 2.
 IF YOUR ANSWER TO QUESTION NO. 1 IS 'NO', SIGN THE NEXT PAGE AND RETURN THIS DOCUMENT TO THE COURT.
 2. Was that defective condition a proximate cause of the injury and death of Clair V. Bunn on October 11, 1973?
    ANSWER 'YES' OR 'NO': ___
IF YOUR ANSWER TO QUESTION NO. 2 IS 'YES', ANSWER QUESTION NO. 3.
 IF YOUR ANSWER TO QUESTION NO. 2 IS 'NO', SIGN THE NEXT PAGE AND RETURN THIS DOCUMENT TO THE COURT.
 3. Did Clair V. Bunn voluntarily and intentionally assume the risk of a known danger which brought about his injury and death on October 11, 1973?
    ANSWER 'YES' OR 'NO': ___
IF YOUR ANSWER TO QUESTION NO. 3 IS 'YES', SIGN BELOW ON THIS PAGE AND RETURN THIS DOCUMENT TO THE COURT.

"1. Was the Caterpillar 988 Wheel Loader in a defective condition at the time it was sold by Caterpillar Tractor Company to Cecil I. Walker Company, West Virginia, on January 28, 1969?
ANSWER 'YES' OR 'NO': __NO__ "

## II. DISCUSSION.

### A. THE "BERKEBILE" CONTENTION.

█ Plaintiff contends that this Court erred in not using the language of the Pennsylvania Supreme Court in *Berkebile v. Brantly Helicopter Corp.*, Pa., 337 A.2d 893 (1975), deleting "unreasonably dangerous" from Section 402A.[2] Plaintiff contends that decision, written by two Justices and in which three other Justices concurred with the result only, and two other Justices filed separate concurring opinions, changed the Pennsylvania law on 402A so that a plaintiff need not prove a defective product was unreasonably dangerous.

This Court charged the jury as follows:

IF YOUR ANSWER TO QUESTION NO. 3 IS 'NO', ANSWER QUESTION NO. 4.
 4. Was Ace Drilling Coal Company negligent at the time of the accident on October 11, 1973?
    ANSWER 'YES' OR 'NO': ___
IF YOUR ANSWER TO QUESTION NO. 4 IS 'YES', ANSWER QUESTION NO. 5.
 IF YOUR ANSWER TO QUESTION NO. 4 IS 'NO', SIGN BELOW ON THIS PAGE AND RETURN THIS DOCUMENT TO THE COURT.
 5. Was the negligence of Ace Drilling Coal Company a proximate cause of the injury and death of Clair V. Bunn on October 11, 1973?
    ANSWER 'YES' OR 'NO': ___
IF YOUR ANSWER TO QUESTION NO. 5 IS 'YES', ANSWER QUESTION NO. 6.
 IF YOUR ANSWER TO QUESTION NO. 5 IS 'NO', SIGN BELOW ON THIS PAGE AND RETURN THIS DOCUMENT TO THE COURT.
 6. Was the negligence of Ace Drilling Coal Company a superceding cause of the injury and death of Clair V. Bunn on October 11, 1973?
    ANSWER 'YES' OR 'NO': ___"

2. See "Defective Standard of Section 402A of Restatement (Second) Torts Questioned. *Berkebile v. Brantley Helicopter Corp.*, Pa., 337 A.2d 893 (1975)", 80 Dick.L.Rev. p. 633 (1976).

"Now, the principle applies where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer which would be unreasonably dangerous to him." (T. 80)

\* · \* \* \* \* \*

"Now, the whole matter of defective condition arises when you can find either by design or manufacture—and there is no evidence about manufacturing defects in this case—that the product itself was designed in a way to make it unreasonably dangerous to the user or consumer." (T. 82)

\* \* \* \* \* \*

"Again, to summarize, by defective condition we mean a condition not contemplated by the ultimate user and which condition is unreasonably dangerous to him and which presents a hazard . . . ." (T. 82)

\* \* \* \* \* \*

"Now, the Plaintiff has the burden of establishing that the defective condition existed and that that defective condition was unreasonably dangerous . . . ." (T. 84)

At the hearing on this Motion, Plaintiff's counsel strenuously argued that this Court deliberately ignored Pennsylvania law as expressed in *Berkebile* by holding the Plaintiff to the burden of proving that this 988 Wheel Loader was unreasonably dangerous to the user or consumer.

This Court followed the lead of Judge Daniel H. Huyett, III in *Beron v. Kramer-Trenton Co.,* 402 F.Supp. 1268 (E.D.Pa. 1975), in which he stated (at p. 1277):

". . . the views expressed in Chief Justice Jones' opinion in *Berkebile* are not the law of Pennsylvania, and that it is proper to instruct a jury that it must find. a defective condition be unreasonably dangerous to the user or consumer."

The Third Circuit approved that decision in *Bair v. American Motors Corporation,* 535 F.2d 249, p. 250 (decided May 17, 1976), stating:

"*Commonwealth v. Little,* 432 Pa. 256, 248 A.2d 32 (1968), declined to follow a prior opinion representing the views of only two justices; the Supreme Court of Pennsylvania there reasoned that an opinion 'joined by only one other member of this Court has no binding precedential value.' *Ibid.* at 260, 248 A.2d at 35. Applying the rationale of *Little* to the *Berkebile* situation, we are constrained to accept the reasoning set forth [in the *Beron* case, supra.] . . ."

"Unreasonably dangerous" is still the law in Pennsylvania in this type of litigation, and we believe the Plaintiff here was rightfully held to that burden.

## B. THE POINTS FOR CHARGE.

■ Plaintiff contends that the Court should have approved the following Points for Charge which were submitted:

"3) The defendant manufacturer-seller is required to provide every element necessary to make its product safe for use."

"4) The defendant manufacturer-seller is effectively the guarantor of the safety of its product."

"5) If the Caterpillar 988 Loader, at the time it was sold, did not contain adequate safety devices for the protection of persons working around the machine, the jury must find that the product was defective."

"10) The plaintiff Executrix is entitled to recover against defendant Caterpillar if she shows sufficient facts to allow the jury to infer that the Caterpillar 988 Loader was not equipped with adequate safety devices at the time it was sold by Caterpillar, and that this was a substantial factor in producing Clair V. Bunn's fatal injuries."

The Restatement 2d of Torts, § 402A, adopted in Pennsylvania in *Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966), reads:

"One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm

thereby caused to the ultimate user or consumer. . . ."

Plaintiff's Points 3 and 10 ignore the fact that the test to determine liability of the seller is not whether the product is safe, but rather, according to 402A, whether it is "unreasonably dangerous". Point 4, although it follows the language in *Salvador v. Atlantic Steel Boiler Co.*, 457 Pa. 24, 319 A.2d 903 (1974), is taken out of context and if read to the jury as submitted by the Plaintiff, would fail to properly instruct the jury that the product must be sold "in a defective condition" for the seller to be liable. *Restatement of Torts* § 402A. Point 5 also fails to instruct the jury that the lack of adequate safety devices must be such that the machine must be "unreasonably dangerous" for the seller to be liable for its defect.

## C. THE DEFINITION OF "UNREASONABLY DANGEROUS".

■ Plaintiff objects to the inclusion of the language defining defective condition in terms of "unreasonably dangerous" in the Court's Charge to the jury. In speaking of defective condition, the Court charged as follows (T. 82):

"Now, the whole matter of defective condition arises when you can find either by design or manufacture—and there is no evidence about manufacturing defects in this case—that the product itself was designed in a way to make it unreasonably dangerous to the user or consumer. And counsel has stated to you, and correctly so, that the lack of a proper safety device can, if you so find, constitute a design defect, but it is for you to say whether or not the Plaintiff has in fact established by a fair preponderance of the evidence that there was a designed defect on those particular aspects alleged in the claim in this case. Again, to summarize, by defective condition we mean a condition not contemplated by the ultimate user and which condition is unreasonably dangerous to him and which presents a hazard beyond that which would be contemplated by the ordinary consumer who purchases it and with the ordinary knowledge common to the user community as to its characteristics. . . ."

Plaintiff contends that this language is the kind that "rings in negligence" and is therefore inappropriate in strict liability cases. We direct Plaintiff's attention to the language in *Beron v. Kramer-Trenton Company, supra* (at pp. 1273–1274):

" . . . First, an examination of Pennsylvania appellate decisions interpreting § 402A reveals that the text and the comments, including in particular comments g, h and i, have been solidly engrafted into Pennsylvania law without reservation. In the absence of an unequivocal rejection of any specific aspect of § 402A by a majority of the Pennsylvania Supreme Court we hesitate to impute such an intention to that Court, sitting as we do in our capacity as a federal diversity court interpreting Pennsylvania law. Second, we believe that the phrase 'defective condition unreasonably dangerous to users' is a unitary concept and that the purpose of the draftsmen would be frustrated by severing from it 'unreasonably dangerous' without substituting another suitable phrase which tends to clarify the meaning of 'defective condition.' In our view the inclusion of 'unreasonably dangerous' serves two overlapping functions in the § 402A formulation of strict liability. We believe it denotes that the draftsmen of the Restatement intended to foreclose the possibility that 'defective condition' might be construed to include any characteristic of a product capable of inflicting injury. In addition, is [sic] signifies that jurors should not resort to their intuitive understanding of 'defective condition' but rather that they should be guided by an objective standard based on community expectations of product safety." [Error in original] [Footnote omitted]

The language used in the Charge was given in an effort to provide the jury with

an objective criteria for determining "defective condition" and is correct.

## D. THE EXPERT TESTIMONY.

■ At the trial, Plaintiff offered to have her expert witness testify that he had seen and had photographs of a Caterpillar 988 Front Wheel Loader with the air precleaner and exhaust pipe mounted in the manner which he recommended to reduce the blind spots. The offer was refused and Plaintiff now contends that evidence would show the feasibility of the design changes recommended.

As stated in *Bowman v. General Motors Corporation,* 64 F.R.D. 62 (E.D.Pa.1974) (at p. 70):

" . . . Evidence of subsequent design modifications and indeed even post-accident precautions are admissible: (1) to refute the position that the existing condition was incapable of improvement, or to demonstrate that precautions were feasible before the injury; or (2) to show that the defendant knew or should have known of a reasonably foreseeable danger yet failed to give notice thereof."

*See also, Sterner v. U. S. Plywood-Champion Paper, Inc.,* 519 F.2d 1352 (8th Cir. 1975).

This Court excluded Plaintiff's offer because the offer as given was not relevant to the issue of the feasibility of the design changes. There was nothing in the offer to show that the changes in the 988 seen by the expert or on the 988 in the photo were either functionally or economically feasible. There was nothing to show whether or not the changes were a result of a special order to perform a particular function or to show that they even worked.

The predicate to the admissibility of such evidence would have been the circumstances under which the changes in the 988 observed had been brought about. In the absence of such proof, the offer was irrelevant.

## E. RESTRICTIONS ON TREATISES.

■ The Plaintiff offered to read into evidence various articles (including one by the National Safety Council and one by a Safety Engineer from General Dynamics) which its expert, Dr. Purkupile, stated he consulted in formulating his opinion. After examining the articles and conferring with counsel, this Court allowed the Plaintiff to read relevant portions of those articles to the jury. Plaintiff now contends that this Court erred in not allowing the reading of the lengthy articles in their entirety to the jury.

The Court exercised its authority under Rule 403 of the Federal Rules of Evidence.[3] in limiting the relevant evidence as contained in the lengthy treatises. To have allowed more would have unnecessarily bogged down the trial with repetitious, time-wasting testimony.

## F. THE USE OF REGULATIONS.

Plaintiff was allowed to read to the jury relevant portions of the Manual of the Corps of Engineers, United States Army, entitled, "General Safety Requirements". In addition, Plaintiff read into evidence certain regulations of the Occupational Safety and Health Administration and the Mining Enforcement and Safety Administration relating to pertinent safety devices on machinery such as a wheel loader. The argument is now made that this Court completely negated the effect of these regulations by its Charge to the jury.

Specifically, the Court stated (T. 81–82):

"You are particularly cautioned to recall that the Court instructed you with respect to various rules and regulations requiring back-up mirrors and audible signaling devices. These rules and regulations were not to be considered as imposing a legislative standard of conduct upon any one other than the user or consumer, which in this case is Ace.

3. "Rule 403. Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Within the facts of this case, the Plaintiff contends that the product, the 988 Caterpillar, was unreasonably dangerous when it left the hands of Caterpillar, and this is a question of fact for you to determine as to Caterpillar without regard to these safety rules and regulations except as you may decide they determine a standard of conduct and which you would then apply to the manufacturer. They do not apply to the manufacturer under the persons to whom the rules and regulations were issued. And as I said, I think you realize when I talk about the consumer or user I am referring to Ace Drilling Company and its employees, including Mr. Bunn."

In accordance with that Charge, this Court approved Defendant's Points for Charge Nos. 6 and 7:

"6. You have heard the testimony in this case about OSHA and MESA regulations. I instruct you that those regulations do not apply to Caterpillar Tractor Company and Caterpillar Tractor Company was not under any obligation to obey those regulations."

"7. You have heard the testimony in this case about a regulation of the United States Corps of Army Engineers. I instruct you that the regulation does not apply to Caterpillar Tractor Company in this case."

■ This Court agrees with the Plaintiff's contention that safety codes are admissible in evidence to support a claim that a given design is hazardous, even though the codes have no binding effect on the Defendant. However, the purpose to which they may be put in a 402A strict liability case is not as clear.

In *Smith v. Hobart Manufacturing Co.,* 194 F.Supp. 530 (E.D.Pa.1961) [reversed and remanded on other grounds, 302 F.2d 570 (3d Cir. 1962)], the plaintiff brought suit against the manufacturer of a meat grinder for alleged negligence in not designing a machine to include known safety devices. There, the plaintiff introduced into evidence the General Safety Law (43 P.S. §§ 25–1 through 25–15) and the Regulations of the Department of Labor and Industry which provided safety standards to be followed in places of employment in Pennsylvania. The defendant there objected to the use of the Safety Law and the Regulations, claiming that they did not apply to the manufacturer but to the employers. At the trial, the judge instructed the jury (at p. 532):

" . . . that they could consider the Safety Law and the Regulations of the Department of Labor and Industry *as a factor* in their deliberations when they were deciding whether the design of the Hobart grinder was reasonably safe . . .." [Emphasis supplied]

The jury was instructed as to all the other elements of the law of negligence and not merely that if they found a violation of the Law and Regulations, the defendant would be liable.

As the Court stated in reviewing the trial (at p. 533):

" . . . this was an ordinary negligence action in which the General Safety Law and the Regulations were before the jury as evidence of the considered judgment of the Commonwealth of Pennsylvania as to the safety features of the design necessary to make a meat grinder a reasonably safe machine."

The action *sub judice* is admittedly not one of negligence, but is one claiming 402A strict liability. The jury in this case was not determining the Defendant's negligence but rather, in accordance with Comment i of the Restatement, they had to determine if the Defendant was strictly liable for selling a defectively designed machine. The juries in both cases, however, could consider Regulations which set forth safety standards for people other than defendants. The juries in both cases had to reach a conclusion as to whether the machines in their respective cases were "reasonably safe" or "unreasonably dangerous". In both cases, they were allowed to use the Regulations *as a factor* in their ultimate decisions.

 

In a similar case involving the same Department of Labor and Industry Regulations [*Green v. Sanitary Scale Company,* 296 F.Supp. 625 (E.D.Pa.1969), vacated and remanded on other grounds, 431 F.2d 371 (3d Cir. 1970)], the trial judge instructed the jury as follows (at p. 628):

" . . . you may consider whether the defendant should have followed these standards or ones similar to them when they designed their meat grinder . .."

Citing *Smith, supra,* the Court explained the charge by stating (at p. 629):

" . . . Since the defendant was charged in the complaint, *inter alia,* with negligent design of the meat grinding machine, the plaintiff was entitled to rely on any competent evidence tending to establish the minimum acceptable standard of design and construction. The aforementioned regulation clearly is relevant in this regard, provided that proper limiting instructions are given to the jury."

The Regulations in both the *Smith* and *Green* cases were used to determine an "acceptable standard of design" and to use this standard to decide either "lack of due care" or "unreasonably dangerous" is a distinction without a difference.

The instructions given by this Court when taken as a whole made clear to the jury that the Regulations *could be used* to set up a standard if they so decided to use it, and it properly instructed them that the Regulations were *not* to be considered as binding upon the Defendant.

## G. THE UNREAD POINT.

The Plaintiff's final contention that this Court erred in approving Defendant's Point for Charge No. 16 is without merit since there is no showing in the record that the Point was ever read to the jury. Therefore, regardless of the propriety of that Point, it does not constitute ground for a new trial since the jury was not exposed to it.

The other contentions raised in the Plaintiff's Motion but not argued, are without merit.

An appropriate Order will be entered denying the Motion.