524 S.E.2d 115

**Donnie DUNCAN, Appellant,**

v.

**CRS SIRRINE ENGINEERS, INC. and Fluor Daniel, Inc., Respondents.**

**No. 3071.**

Court of Appeals of South Carolina.

Heard Oct. 6, 1999.

Decided Nov. 8, 1999.

538

William A. Jordan, of William A. Jordan, L.L.C.; Herman E. Cox, both of Greenville, for appellant.

Thomas H. Coker, Jr., and Boyd B. Nicholson, Jr., both of Haynsworth, Marion, McKay & Guerard; Samuel W. Outten and James L. Rogers, Jr. both of Leatherwood, Walker, Todd & Mann, all of Greenville; and William R. Poplin Jr., of Kilpatrick Stockton, of Atlanta, GA., for respondents.

HEARN, Judge:

Donnie Duncan appeals an order granting CRS Sirrine Engineers, Inc. (Sirrine) and Fluor Daniel, Inc. summary judgment on Duncan's personal injury claims. We affirm.

## FACTS

Duncan worked as a production coating operator for Hoechst Celanese when he entered a production area and climbed a set of stairs to the mezzanine level, approximately eight feet above the coating machinery. Duncan walked down a narrow catwalk and, as he turned the corner, fell through a partially opened hatch door. The fall dislocated Duncan's wrist, caused nerve damage, and required surgery to repair his radius bone. Duncan subsequently received a ten percent workers' compensation impairment rating.

Duncan sued Sirrine and Fluor Daniel alleging Sirrine designed the hatch and Fluor Daniel built the hatch. Duncan's suit alleged causes of action for negligence, breach of implied warranty of merchantability, breach of implied warranty for a particular purpose, and strict liability. Sirrine answered Duncan's complaint and admitted designing the hatch.

Duncan's expert, Charles A. Fletcher, testified in deposition that the open hatch violated established standards for hatches, walkways, and platforms. Fletcher relied on Occupational Safety and Health Administration (OSHA) standards in opining that the hatch should have been protected by a person guarding the gate, a mechanical gate guard, or other protective mechanism.[1] Fletcher further stated the workmanship on the hatch "appeared to be entirely adequate."

---

1. Fletcher also relied on standards promulgated by the American National Standards Institute (ANSI).

Pursuant to requests by both Duncan and Sirrine, the circuit court extended discovery an additional sixty days and scheduled trial for the term of court beginning September 22, 1997. On September 19, 1997, Sirrine filed a motion to amend its answer to deny designing the hatch. The circuit court granted Sirrine's motion to amend and granted Duncan an additional sixty days to conduct discovery.

Fluor Daniel then filed a motion for summary judgment and submitted an affidavit by J. Greg Denton, Fluor Daniel's manager of operations. Denton's affidavit stated Fluor Daniel only provided maintenance and fabrication services for Hoechst and never provided any engineering, design, or drafting services related to the hatch. Denton asserted that Hoechst reviewed Fluor Daniel's installation performance and would not have accepted the work if Fluor Daniel's construction failed to meet the design, assembly, quality, or safety specifications provided by Hoechst. The circuit court granted Fluor Daniel summary judgment.

On December 2, 1997, Duncan requested an additional sixty days to conduct discovery on his action against Sirrine. On January 22, 1998, Duncan deposed Jeffrey A. Reeves, a structural engineer for Sirrine and the most knowledgeable Sirrine employee on whether Sirrine designed the hatch allegedly causing Duncan's accident. Reeves stated Sirrine was not involved in the design of the platform or hatch allegedly causing Duncan's accident. Sirrine then filed a motion for summary judgment which the court granted. Duncan appeals.

## DISCUSSION

### I.

■ Duncan first contends Sirrine is bound by its original pleadings and the circuit court erred in granting Sirrine's motion to amend its answer. We disagree.

While Duncan asserts Sirrine should be bound by its original pleadings, even the cases Duncan relies on as authority relieve a party from its original pleadings when the party withdraws or amends its pleadings. *See, e.g., Elrod v. All,* 243 S.C. 425, 436, 134 S.E.2d 410, 416 (1964) ("We consider the pleadings in this case in the light of the general rule, that the

parties to an action are judicially concluded and bound by such *unless withdrawn, altered or stricken by amendment or otherwise."* (emphasis added)). Therefore, the issue on appeal is whether the circuit court properly granted Sirrine leave to amend its answer.

■ Rule 15, SCRCP, provides that "leave [to amend pleadings] shall be freely given when justice so requires and does not prejudice any other party." Rule 15(a), SCRCP; *see also Crestwood Golf Club, Inc. v. Potter,* 328 S.C. 201, 218, 493 S.E.2d 826, 835 (1997). "The prejudice Rule 15 envisions is a lack of notice that the new issue is going to be tried, and a lack of opportunity to refute it." *Pool v. Pool,* 329 S.C. 324, 328–9, 494 S.E.2d 820, 823 (1998) (citing *Soil & Material Eng'rs, Inc. v. Folly Assocs.,* 293 S.C. 498, 501, 361 S.E.2d 779, 781 (Ct.App.1987)).

■ "It is well established that a motion to amend is addressed to the sound discretion of the trial judge, and that the party opposing the motion has the burden of establishing prejudice." *Pruitt v. Bowers,* 330 S.C. 483, 489, 499 S.E.2d 250, 253 (Ct.App.1998). Courts have wide latitude in amending pleadings and "[w]hile this power should not be used indiscriminately or to prejudice or surprise another party, the decision to allow an amendment is within the sound discretion of the trial court and will rarely be disturbed on appeal." *Berry v. McLeod,* 328 S.C. 435, 450, 492 S.E.2d 794, 802 (Ct.App.1997). "The trial judge's finding will not be overturned without an abuse of discretion or unless manifest injustice has occurred." *Id.*

The circuit court granted Sirrine's motion to amend but also granted Duncan an additional sixty days for discovery. Duncan subsequently requested a second sixty day discovery extension thus providing Duncan approximately four months to conduct discovery after Sirrine amended its answer. When the four months expired and Duncan appeared before the circuit court to contest Sirrine's motion for summary judgment, Duncan had only conducted one deposition and failed to present any evidence establishing Sirrine designed the hatch. The additional four month discovery period provided more than adequate notice and opportunity to discover a sufficient amount of evidence to withstand Sirrine's motion for summary judgment. *See Soil & Material Eng'rs, Inc.,* 293 S.C. at 501,

361 S.E.2d at 781 ("In considering potential prejudice to the opposing party, the court should consider whether the opposing party has had the opportunity to prepare for the issue now being raised formally." (internal citation omitted)). Moreover, since Duncan produced no evidence that Sirrine designed the hatch other than Sirrine's initial admission, requiring Sirrine to be bound by its initial pleading would be grossly unfair.[2] Therefore, we affirm the circuit court's decision permitting Sirrine to amend its answer.

## II.

Duncan next contends the circuit court erred in granting Fluor Daniel summary judgment. We disagree.

Summary judgment is appropriate when it is clear there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Baird v. Charleston County*, 333 S.C. 519, 529, 511 S.E.2d 69, 74 (1999); *see also Standard Fire Ins. Co. v. Marine Contracting and Towing Co.*, 301 S.C. 418, 421, 392 S.E.2d 460, 462 (1990) (stating a motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law). In ruling on a motion for summary judgment, the evidence and the inferences which can be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Baird*, 333 S.C. at 529, 511 S.E.2d at 74.

Duncan asserts the OSHA and ANSI standards implicated by his expert's testimony imposed a duty on Fluor Daniel to ensure an open hatch was guarded and thus created a genuine issue of material fact sufficient to overcome Fluor Daniel's motion for summary judgment. Duncan also contends an implied warranty of workmanship burdened Fluor Daniel with a duty to fulfill its construction obligations in accordance with OSHA standards.[3]

To the extent Duncan relies on an implied warranty of workmanship theory, his contentions are not preserved for

---

2. The hatch was apparently designed by Hoechst, Duncan's employer.

3. Duncan's complaint also alleged causes of action for breach of an implied warranty of merchantability, breach of an implied warranty of

appeal because Duncan failed to plead the issue, failed to raise the issue to the circuit court, the circuit court failed to rule on the issue, and Duncan failed to file a Rule 59(e), SCRCP motion. *See Harris v. Bennett*, 332 S.C. 238, 245, 503 S.E.2d 782, 786 (Ct.App.1998) ("As a general rule, an issue may not be raised for the first time on appeal, but must have been raised to and ruled upon by the court below to be preserved for appellate review."); *Noisette v. Ismail*, 304 S.C. 56, 58, 403 S.E.2d 122, 124 (1991) (holding an issue not preserved where the trial court does not explicitly rule on a question and the appellant fails to make a Rule 59(e), SCRCP, motion to alter or amend the judgment on that ground).

 Whether OSHA's regulations imposed a duty on Fluor Daniel under a negligence theory depends, in part, on whether Fluor Daniel is subject to the OSHA regulations.

---

fitness for a particular purpose, and strict liability. These issues are not preserved for appeal because Duncan failed to argue them in his brief. *See Bell v. Bennett*, 307 S.C. 286, 294, 414 S.E.2d 786, 791 (Ct.App. 1992) (noting an issue which is not argued in the brief is deemed abandoned); Rule 208(b)(1)(B), SCACR ("Ordinarily, no point will be considered which is not set forth in the statement of the issues on appeal.").

To the extent preserved, Duncan's claims under implied warranty theories are unavailing because a sale must occur before an implied warranty can arise. *See In re Breast Implant Product Liability Litigation*, 331 S.C. 540, 553, 503 S.E.2d 445, 452 (1998) (citing *Priest v. Brown*, 302 S.C. 405, 411, 396 S.E.2d 638, 641 (Ct.App.1990) (holding a sale must occur before an implied warranty can arise)).

Duncan's strict liability argument also fails because Fluor Daniel's assembly work amounted to a service, rather than a product, and South Carolina's strict liability statute does not apply to services. *See In re Breast Implant Product Liability Litigation*, 331 S.C. at 546–7, 503 S.E.2d at 448 (acknowledging South Carolina Code Ann. § 15–73–10 "imposes strict liability in tort upon the suppliers of defective products" but does not apply to services (quoting *Samson v. Greenville Hosp. Sys.*, 297 S.C. 409, 410, 377 S.E.2d 311, 311 (1989))); *see also* W. Page Keeton et al., *Prosser and Keeton on Torts*, § 104A, at 724 (5th ed. 1984) ("The transaction of the building contractor has generally been regarded as a transaction involving the rendition of a service even though the result of the service is to supply a structure or building to the owner" and therefore strict liability is inappropriate); *but see Worrell v. Barnes*, 87 Nev. 204, 484 P.2d 573 (1971) (imposing strict liability on a building contractor under the theory that a structure is in essence a product sold within the meaning of a sale), *cited in* Keeton, *supra*, § 104A, at 724 & n. 38.

OSHA standards protect employees working for any business qualifying as an employer under the Occupational Safety and Health Act, 29 U.S.C.A. § 651 et seq. (1999). *Employment Coordinator* § WS–10,051 (Thomas Curry et al. eds.1999); OSHA Reg., 29 C.F.R. § 1910.2(c) & (d) (1994). The key factor in determining whether a party constitutes an employer under OSHA regulations is whether the party has the right to control an employee's work. *Employment Coordinator* § WS–10,154 (citing *Abbonizio Contractors* 16 BNA OSHC 2125 (1994)).

Duncan neither produced any evidence nor ever asserted that Fluor Daniel had a right to control Duncan's work. Consequently, Fluor Daniel failed to constitute Duncan's employer rendering the OSHA regulations inapplicable. *See Bunn v. Caterpillar Tractor Co.*, 415 F.Supp. 286, 292 (W.D.Pa.1976) (noting that OSHA safety codes have no binding effect on a defendant who was not the plaintiff's employer), *aff'd*, 556 F.2d 564 (3rd Cir.1977). Similarly, the ANSI standards themselves only purport to be a guide and thus do not impose any extra duty on Fluor Daniel. Furthermore, Duncan failed to cite any case, and our research revealed none, using OSHA or ANSI standards to impose liability on a contractor when the contractor merely assembled a project with design specifications provided by a third party.[4]

Upholding the circuit court's decision granting Fluor Daniel summary judgment accords with the long accepted notion that "the contractor is not liable if he has merely carried out carefully the plans, specifications and directions given him,

---

**4.** Cases admitting OSHA or ANSI standards as relevant, even when not binding on a defendant, are distinguishable. *See Edwards v. ATRO SpA*, 891 F.Supp. 1074 (E.D.N.C.1995) (admitting industry standards to determine whether punitive damages are appropriate in an action against a nail gun manufacturer); *Coates v. AC and S, Inc.*, 844 F.Supp. 1126 (E.D.La.1994) (admitting OSHA position papers into evidence as relevant in a wrongful death action against manufacturers of asbestos products where there is no indication the manufacturer used asbestos at the direction of the plaintiff's employer); *Bunn*, 415 F.Supp. 286 (admitting OSHA safety codes into evidence to support a claim against a tractor manufacturer that a given design was hazardous); *Kershaw County Bd. of Educ. v. United States Gypsum Co.*, 302 S.C. 390, 396–7, 396 S.E.2d 369, 372–3 (1990) (admitting DHEC asbestos regulations into evidence because, in part, the regulations were not admitted to establish liability).

since in that case the responsibility is assumed by the employer, at least where the plans are not so obviously defective and dangerous that no reasonable man would follow them." Keeton, *supra*, § 104A, at 723–4; *see also* 63A Am.Jur.2d *Products Liability* § 1513, at 678–9 (1997) ("[C]ontractor is not subject to liability if the specified design is insufficient to make the product safe, unless it is so obviously bad that a competent contractor would know that there was a good chance that the product would be dangerously unsafe ."); *but see Collins v. Newman Machine Co.*, 190 Ga.App. 879, 380 S.E.2d 314, 317 (1989) (noting Georgia has not recognized the product specifications defense). In the present case, Duncan's own expert testified that stationing a person to guard the hatch, a solution completely unrelated to construction, would ameliorate the potential hazard. Therefore, the design specifications provided to Fluor Daniel were not so obviously defective as to require Fluor Daniel to supplement the design on its own.

Accordingly, the circuit court's order granting Sirrine and Fluor Daniel summary judgment is

**AFFIRMED.**

CURETON and HOWARD, JJ., concur.