709 S.E.2d 639

**James Madison COMPTON, Respondent,**

**v.**

**SOUTH CAROLINA DEPARTMENT OF CORRECTIONS, Jon Ozmint, Director, David Tatarsky, General Counsel for SCDC, James Brennan, Assistant Division Director of Inmate Records, and South Carolina Law Enforcement Division, Robert M. Stewart, Chief, Defendants,**

**Of whom South Carolina Department of Corrections, Jon Ozmint, Director, David Tatarsky, General Counsel for SCDC and James Brennan, Assistant Division Director of Inmate Records are, Appellants.**

**No. 26968.**

Supreme Court of South Carolina.

Heard March 3, 2011.

Decided May 2, 2011.

Daniel R. Settana, Jr. and Erin M. Farrell, of McKay Cauthen Settana & Stubley, all of Columbia, for appellants.

Kenneth C. Hanson, of Hanson Law Firm, PA, of Columbia, for respondent.

Justice HEARN.

The South Carolina Department of Corrections (SCDC) and three of its officers [1] (Appellants) appeal the order of the circuit court enjoining them from forwarding certain information regarding James Madison Compton to the Department of Probation, Parole, and Pardon Services (DPPPS). Appellants argue the circuit court erred in granting Compton a preliminary injunction because Compton has failed to demonstrate a likelihood of success on the merits of his claim. We disagree and affirm the circuit court as modified.

---

1. The suit names Jon Ozmint, Director of SCDC; David Tatarsky, General Counsel for SCDC; and James Brennan, Assistant Division Director of Inmate Records for SCDC as parties. The State Law Enforcement Division and its director, Robert Stewart, also were parties originally, but they were dismissed in 2007.

## FACTUAL/PROCEDURAL BACKGROUND

In September 1977, Compton committed burglary in the first degree, assault and battery with intent to kill, armed robbery, and aggravated assault and battery in Pickens County, South Carolina. He then fled South Carolina for Georgia, but he was apprehended there a short time later and returned voluntarily to South Carolina for prosecution. Georgia filed fugitive from justice charges against Compton, but they were dismissed for failure to present them to a grand jury. In October 1977, Compton pled guilty to all the charges pending against him in South Carolina and was sentenced to life plus forty-five years imprisonment.

In 1982, Compton was away without leave (AWOL) from prison for a period of time when he walked off while on trustee status; however, the matter was handled internally, so no charges were filed against him when he returned. In 1995, Compton went AWOL again, but he was not returned to SCDC's custody until 2002 when he was apprehended while hiding in North Carolina. An arrest warrant and indictment were issued for Escape under Section 24–13–410 of the South Carolina Code (2002), but the charge was *nol prossed* after the State twice failed to appear before the grand jury. The circuit court in Spartanburg County issued an order in 2005 for the destruction of the arrest warrant records and indictment in connection with the 1995 incident.

SCDC's Inmate Classification Summary Report currently contains the following notations pertaining to Compton's escape history in what Appellants call his "Escape Screen":

Escapes
10/13/95    Other Escape Related
            Code Not in Table
09/21/77    Other Escape Related
            Code Not in Table

Compton's criminal history in the report references the charges for which he was incarcerated in addition to crimes he committed while he was AWOL, but it does not mention anything regarding the escapes themselves. Under the heading "History of Movements," the report reflects that he was "ESCAPED–AWOL" from 1995 through 2002. Additionally, the report notes an "Escape" in 1982 under the heading

"History of Earned Work Credit Assignments." SCDC maintains that it keeps records of these movements, regardless of whether there was an associated criminal prosecution, for security and classification purposes.[2] Compton currently is eligible for parole, and SCDC forwards all of this information to DPPPS for Compton's parole hearings. During these hearings, DPPPS has questioned Compton specifically about his escape history. To date, DPPPS has not granted Compton parole.

Compton brought the instant declaratory judgment action seeking a declaration that SCDC has failed to comply with the order to destroy the records of his 1995 escape and any reference to his escapes must be destroyed pursuant to Section 17–1–40(A) of the South Carolina Code (2003 & Supp. 2010). Compton subsequently filed a motion for contempt and injunctive relief, requesting the court hold Appellants in contempt for not complying with the destruction order and order them to "destroy *all* evidence of the three charges remaining on his SCDC record" and prevent the dissemination of this evidence to other state agencies, in particular DPPPS, under section 17–1–40(A). The circuit court found Appellants were not in willful violation of any court order and accordingly denied Compton's motion for contempt. As to the records, the court found the 1977 and 1995 entries are maintained for security and classification purposes and therefore are not subject to "complete destruction" under section 17–1–40(A). However, the court enjoined Appellants from forwarding information regarding the 1995 escape to DPPPS based on its reading of the statute. The court also found there was no 1982 charge in SCDC's records that it could enjoin Appellants from forwarding to DPPPS. On Compton's motion to alter or amend, the court extended its order to cover the 1977 flight as well. This appeal followed.

## LAW/ANALYSIS

Appellants argue the circuit court erred in granting Compton a preliminary injunction because Compton cannot show a likelihood of success on the merits of his claim.[3] We disagree.

---

2. SCDC's policies provide that an escape history will dictate to which level of institution an inmate will be assigned.

■ The purpose of a preliminary injunction is to preserve the status quo and prevent irreparable harm to the party requesting it. *Powell v. Immanuel Baptist Church*, 261 S.C. 219, 221, 199 S.E.2d 60, 61 (1973). An applicant for a preliminary injunction must allege sufficient facts to state a cause of action for injunction and demonstrate that this relief is reasonably necessary to preserve the rights of the parties during the litigation. *County of Richland v. Simpkins*, 348 S.C. 664, 669, 560 S.E.2d 902, 904 (Ct.App.2002). Accordingly, the applicant must establish three elements to receive this relief: (1) he will suffer immediate, irreparable harm without the injunction; (2) he has a likelihood of success on the merits; and (3) he has no adequate remedy at law. *Scratch Golf Co. v. Dunes W. Residential Golf Props., Inc.*, 361 S.C. 117, 121, 603 S.E.2d 905, 908 (2004). Appellants' challenge to the injunction concerns the second element, whether Compton has demonstrated a likelihood of success on the merits.[4]

■■ Whether to grant a preliminary injunction is left to the sound discretion of the trial court and will not be overturned unless it is clearly erroneous. *Atwood Agency v.*

3. At oral argument, attorneys for the parties took the position that the circuit court's order was a decision on the merits of Compton's claims. However, despite the parties' belief as to the scope of the circuit judge's ruling, she acknowledged on the record at the hearing that the case would not be concluded upon her decision, but rather would continue for a hearing on the merits. Further, a decision on the merits at this procedural juncture would be erroneous. *See Helsel v. City of N. Myrtle Beach*, 307 S.C. 29, 32, 413 S.E.2d 824, 826 (1992) (stating that a preliminary injunction "is made without prejudice to the rights of either party pending a hearing on the merits," and the merits "are determined without reference" to the preliminary injunction at trial); *Transcontinental Gas Pipe Line Corp. v. Porter*, 252 S.C. 478, 481, 167 S.E.2d 313, 315 (1969) ("It is well settled that, in determining whether a temporary injunction should issue, the merits of the case are not to be considered, except in so far as they may enable the court to determine whether a prima facie showing has been made. When a prima facie showing has been made entitling plaintiff to injunctive relief, a temporary injunction will be granted without regard to the ultimate termination of the case on the merits."). Accordingly, we decline to reach Appellants' and Compton's arguments regarding the merits of section 17–1–40(A)'s applicability.

4. Appellants also argue the court erred in not balancing the equities in this case. However, we recently announced that balancing the equities is no longer a requirement for a preliminary injunction. *Poynter Invs., Inc. v. Century Builders of Piedmont, Inc.*, 387 S.C. 583, 586, 694 S.E.2d 15, 17 (2010).

*Black,* 374 S.C. 68, 72, 646 S.E.2d 882, 884 (2007). In evaluating whether a plaintiff is entitled to a preliminary injunction, the court must examine the merits of the underlying case only to the extent necessary to determine whether the plaintiff has made a sufficient prima facie showing of entitlement to relief. *Helsel,* 307 S.C. at 32, 413 S.E.2d at 826. Accordingly, the circuit court's analysis was limited to only whether Compton's complaint stated a prima facie case that SCDC violated the provisions of section 17–1–40(A) and Compton will be immediately and irreparably harmed.

■ Section 17–1–40(A) provides, in pertinent part,

A person who after being charged with a criminal offense and the charge is discharged, proceedings against the person are dismissed, or the person is found not guilty of the charge, the arrest and booking record, files, mug shots, and fingerprints of the person must be destroyed and *no evidence of the record pertaining to the charge may be retained by any municipal, county, or state law enforcement agency.*

S.C.Code Ann. § 17–1–40(A) (Supp.2010) (emphasis added). Appellants do not argue Compton has failed to make a prima facie showing of his entitlement to relief for Appellants' purported violation of this statute. Instead, they argue that based on the circuit court's determination the records are not subject to complete destruction, the plain language of section 17–1–40(A) contains no further restriction on their use and Compton's claim must fail. However, Appellants misconstrue the nature of the inquiry. The court must determine only the *likelihood* of whether Compton will prevail on the merits based on the allegations in his complaint, not whether these records *actually* are subject to destruction. Therefore, their reliance on the court's determination regarding the destruction of the records is misplaced. Compton's complaint alleges he was never convicted of the 1977 fugitive from justice charge or the 1995 escape charge. He further alleges there is an order expunging the 1995 charge from his records. Nevertheless, SCDC keeps a record of those events in Compton's file.[5]

---

5. Whether SCDC is a law enforcement agency for purposes of section 17–1–40(A) is not before us. The parties all seem to agree SCDC falls within the ambit of the statute.

Based on a plain reading of the statute, Compton argues Appellants have failed to comply with it because these are records pertaining to criminal charges that were not destroyed despite the fact that the proceedings against him all have been dismissed. Compton further alleges he will be immediately and irreparably harmed by Appellants' actions because DPPPS will continue to deny him parole based on his escape history. Indeed, a transcript of a recent parole hearing for Compton shows DPPPS specifically questioning him about the 1995 incident.

We find the circuit court's conclusion that Compton has demonstrated a likelihood of success on the merits of his claim is not clearly erroneous. The statute plainly prohibits the retention of any evidence pertaining to the charge once it has been dismissed or there has been an acquittal. The notations regarding the 1977 and 1995 escapes on the Escape Screen appear to be related to the fact that there were charges filed for each of those incidents. Importantly, the Escape Screen contains no mention of the 1982 escape—for which no charges were filed—while that incident is reflected elsewhere on the report. Compton has also alleged he will continue to be denied parole so long as DPPPS receives this information. In fact, Appellants do not appear to argue Compton will not suffer immediate, irreparable harm. Therefore, we can find no clear error in the conclusion Compton has made out a prima facie case that SCDC has violated the plain language of the statute and will suffer immediate, irreparable harm. Accordingly, he has demonstrated a likelihood of success on the merits and the circuit court did not err in granting preliminary injunctive relief.[6]

---

6. Appellants argue the circuit court erred in awarding any relief at all because DPPPS is a necessary party under Rule 19(a), SCRCP, who was not joined. However, Appellants never moved for DPPPS to be joined under Rule 19, and the only time they made a "motion" to dismiss on this ground was in their memorandum in opposition to Compton's motion for contempt and injunctive relief. Furthermore, the circuit court never addressed this argument, and Appellants did not file a Rule 59(e) motion. Therefore, this issue is not preserved for review. *See Duncan v. CRS Sirrine Eng'rs, Inc.*, 337 S.C. 537, 543–44, 524 S.E.2d 115, 119 (Ct.App.1999) ("[H]is contentions are not preserved for appeal because Duncan failed to plead the issue, failed to raise the issue to the circuit court, the circuit court failed to rule on the issue, and Duncan failed to file a Rule 59(e), SCRCP motion.").

■ What remains to be determined is the scope of the injunction. Because the sole authority for Compton's complaint is section 17–1–40(A), the injunction granted by the circuit court will extend only as far as that section does. Section 17–1–40(A) applies only to "evidence of the record pertaining to the *charge*," including but not limited to the arrest and booking records, files, mug shots, and fingerprints. (emphasis added). It therefore does not apply to any recordation of historical events beyond the charge itself. For example, the facts precipitating the charge are not covered by this statute because they are mere events that exist irrespective of any criminal proceedings. As applied to the instant case, the distinction drawn under section 17–1–40(A) is the distinction between "capital-e Escape"—a criminal charge—and "lowercase-e escape"—a mere fact that a person was AWOL. Section 17–1–40(A) prohibits the retention, and by extension the dissemination, of the former; it contains no restrictions with respect to the latter. Based on our conclusion above that Compton has stated a prima facie case that the notions on his Escape Screen are related to the charges filed against him in 1977 and 2002, Appellants are enjoined from forwarding this information to DPPPS. However, Appellants are not enjoined from forwarding any notations of historical events to DPPPS, such as the fact that Compton was AWOL, found under Compton's "History of Movements" and "History of Earned Work Credit Assignments." We express no opinion as to whether the information on Compton's Escape Screen actually is evidence pertaining to the criminal charges filed in connection with those incidents under section 17–1–40(A). We merely hold that because Compton has stated a prima facie case that it is, the preliminary injunction will cover this information.

Appellants argue an injunction preventing them from disseminating this information prevents them from exercising their statutory duty to forward information to DPPPS. *See Frady v. Student Loan Servicing Ctr.,* 313 S.C. 561, 564, 443 S.E.2d 580, 582 (Ct.App.1994) ("[O]ne may not generally enjoin a state agency from the performance of duties imposed by valid statute...."). Section 24–21–70 of the South Carolina Code (2007) requires Appellants to "keep a record of the industry, habits, and deportment of the prisoner, as well as

other information requested by [DPPPS] and furnish it to them upon request." We find no conflict. Section 24–21–70 speaks broadly to a prisoner's *conduct* as it relates to his "industry, habits, and deportment," which does include the existence of legal proceedings such as criminal charges. A prisoner absenting himself from a prison (commonly referred to as an escape) is a fact that exists regardless of whether charges are filed in connection with it, which certainly falls within the ambit of the prisoner's "deportment." Because the injunction we affirm today only enjoins the dissemination of records pertaining to criminal charges and not historical facts, Appellants are not enjoined from forwarding information they have a statutory duty to send to DPPPS.[7]

## CONCLUSION

For the foregoing reasons, we affirm the order of the circuit court as modified. In doing so, we express no opinion as to section 17–1–40(A)'s ultimate application to the information contained in Compton's records. Until the circuit court determines the merits of Compton's claim, Appellants are enjoined from forwarding the notations on Compton's Escape Screen to DPPPS, but they are not enjoined from forwarding historical evidence of Compton's movements. When the court makes such a determination, it will be done with no reference to the order of the circuit court before us today.

TOAL, C.J., PLEICONES, BEATTY and KITTREDGE, J., concur.

---

**7.** We do note that section 24–21–70 also requires Appellants to forward "other information requested by" DPPPS beyond just the industry, habits, and deportment of the prisoner. To the extent this would permit DPPPS to request Appellants to forward a record of a prisoner's criminal charges, section 24–21–70 presupposes those records validly exist in the prisoner's file. If they must be destroyed by virtue of section 17–1–40(A), then no obligation arises to forward them under 24–21–70. At this stage in the proceedings, Compton has shown a likelihood of success on the merits that the entries on his Escape Screen must be destroyed. It is therefore appropriate to enjoin Appellants from forwarding this information until it can be determined at a final hearing whether they actually must be destroyed in order to prevent irreparable harm to Compton.