# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Jennings-Dill, Inc., Respondent,

v.

Eric Israel, Appellant.

Appellate Case No. 2021-001137

Appeal from Greenville County
Alex Kinlaw, Jr., Circuit Court Judge

Opinion No. 6046
Heard December 6, 2023 – Filed January 24, 2024

**AFFIRMED**

Matthew R. Ozment, of Grove Ozment, LLC, of
Greenville, for Appellant.

Phillip Arthur Kilgore, of Greenville, Christopher Ray
Thomas, of Columbia, both of Ogletree Deakins Nash
Smoak & Stewart, PC, and Sara Elizabeth Olschewske,
of Simpsonville, all for Respondent.

**GEATHERS, J.:** Appellant Eric Israel appeals the circuit court's issuance of a preliminary injunction that enjoins Israel from using documents to which he had access during his prior employment with Respondent Jennings-Dill, Inc. (JDI). The injunction explicitly prohibits Israel from using the information in the documents to bid on any project on behalf of his current employer, Place Services, Inc. (PSI), or to solicit JDI employees. JDI alleged the documents contained confidential information and trade secrets. Israel argues the circuit court erred in finding JDI

demonstrated a likelihood of success on the merits because (1) no evidence was presented to show that Israel possessed or misappropriated a trade secret or confidential information, and (2) the circuit court relied exclusively on hearsay and speculative statements to find Israel had solicited JDI employees. Israel also argues the circuit court erred by improperly "balancing the equities" between the parties to support granting the preliminary injunction. We affirm.

## FACTS

JDI is a full-service commercial plumbing and gas piping company. JDI's Plumbing Division accounts for twenty to thirty percent of JDI's annual revenue. Israel worked for JDI for approximately eleven years as an at-will employee with no restrictive covenants. Israel began his tenure as a plumber and was eventually promoted to plumbing superintendent, a supervisory position over foremen and plumbers. In the superintendent position, Israel was issued a company iPad on which he had access to what JDI deemed to be confidential information related to employee payroll and retention as well as JDI's bidding process.[1] Employees who were issued an iPad received and were subject to JDI's "iPads or Electronic Devices Usage Policy." The policy provided that employees with company-issued iPads were forbidden from copying sensitive data and were responsible for recognizing the need to protect confidential data.

On June 13, 2021, Israel sent an email to JDI's management informing them of his intent to resign on July 8, 2021.[2] On June 24, 2021, Israel discussed his resignation with Andy Locklair, JDI's Vice President of Operations, in a phone call. There is some dispute about what occurred during this phone call. Locklair stated that during the call, Israel reiterated his intention to resign and attempted to give his two-week notice. Locklair testified he told Israel there was no need to work out the remaining two weeks and that Israel needed to return all his company-issued

---

[1] JDI's bidding process involves evaluating the proposed project and specifications, projecting the costs of materials, projecting the hours of labor necessary to complete the project, and assigning a blended hourly labor rate to the project. The blended hourly rate for the Plumbing Division includes the pay rates for plumber helpers, plumbers, plumbing foremen, the plumbing superintendent, and the project manager.

[2] Israel testified his decision to resign was "out of frustration over the low compensation being paid to those [he] supervised and [himself]." However, in the resignation email—which JDI produced—Israel stated he was resigning because he had been "given a good opportunity with another company for change and growth." According to Israel, he was hired by PSI on July 6, 2021.

property—including his keys, iPad, truck, and tools—the following morning. According to Israel, he and Locklair had discussed his intention to resign on the phone, but it was not until the following morning on June 25 that Locklair informed Israel via email that he was no longer an JDI employee and that he did not need to work the rest of his notice period. Israel provided a copy of this email in which Locklair stated, "In follow up to our conversation late yesterday afternoon, we accept your resignation. A two[-]week notice will not be required. Please make arrangements this morning to return all company assets . . . ."

Israel testified that on the same night as the phone call with Locklair, one of his subordinates—Anthony Driggers—called Israel and asked about a raise he had been promised. Israel testified that while speaking with Driggers, he opened several files in ShareFile on his company-issued iPad to check Driggers's current pay rate. According to Israel, he attempted to open a file but it failed to open due to the file size. He then attempted to open the file once more. Finally, he tried to open a different file to check Driggers's pay rate. Israel testified he was unable to locate the pay rate in any file he viewed.

A report from ShareFile indicated Israel downloaded three files to his company-issued iPad that evening. The three files were titled: "Personnel Report," "Personnel Report Jan 2021 – Dec 2021," and "JD Employee List" (collectively, Personnel Documents). According to JDI, these files were, respectively, the monthly employee headcounts through July 2021; personnel changes (including new hires and terminations); and the personal contact information and pay rates for all JDI employees, not just those in the Plumbing Division. Israel returned the company-issued iPad on June 25. According to JDI, within three weeks of Israel's resignation, the Plumbing Division lost twelve employees, reducing its workforce down to only seventeen employees.

In July, Israel began working for PSI—a company that engages in mechanical contracting, including plumbing services. Israel was not the first JDI employee to leave JDI's employ and start to work for PSI. A former JDI plumbing superintendent, Phillip Dobbins,[3] was already employed by PSI at the time Israel resigned.

---

[3] JDI has commenced a separate action against Dobbins and PSI alleging breach of contract, fraudulent misrepresentation, negligent misrepresentation, tortious interference with contractual relations, intentional interference with prospective contractual relations, conversion, violation of the South Carolina Trade Secrets Act (SCTSA), civil conspiracy, unjust enrichment, and unfair trade practices.

On July 13, 2021, Dobbins sent an email to Israel's JDI email address in which Dobbins informed Israel that Tony Smith, a PSI employee whom JDI alleged it previously employed, needed to complete a PSI-required training. It was at that moment, according to Locklair, JDI "was able to connect Israel's actions [in] download[ing] its documents with what appeared to be a clear scheme to solicit and recruit [JDI] employees by having Israel use the unlawfully obtained information to raid [JDI's] [P]lumbing [D]epartment." Locklair testified that most of the employees that left following Israel's departure were long-term and never indicated any displeasure with their jobs. According to Locklair, four employees informed JDI management that Israel had entered JDI jobsites with "no legitimate business purpose" and had solicited JDI employees to work for PSI. Locklair testified that two of the employees who reported Israel's presence on jobsites and solicitation have since resigned.[4] Locklair also stated he believed Israel contacted or attempted to contact at least four other employees.

JDI sought the preliminary injunction to prevent Israel from using or disclosing the confidential information and trade secrets contained within the Personnel Documents and from improperly soliciting JDI employees. The claims on which JDI sought injunctive relief were: (1) misappropriation of trade secrets, (2) unfair trade practices, (3) conversion, and (4) unjust enrichment/quantum meruit.[5] JDI stated it considers the compilation of its employees' names, their contact information, and their pay rates to be confidential and a trade secret because it has independent economic value, is not readily available to the public, and allows JDI to maintain a competitive advantage. JDI asserted it made reasonable efforts to maintain the secrecy of the Personnel Documents and JDI would be put at an unfair competitive disadvantage if a competitor received the information. JDI noted its ability to participate in the bidding process is dependent on the number of pending

---

*Jennings-Dill, Inc. v. Place Servs Inc.*, 2021-CP-2305713 (available on the Greenville County Public Index). The case has not yet concluded.

[4] Locklair alleged one of those employees, Scottie Strickland, stated he was leaving JDI because Israel approached him and persuaded him to work for PSI. Israel provided an affidavit from Strickland in which Strickland testified he initiated the conversation with Israel about working for PSI and that Israel did not solicit him to work for PSI.

[5] In the underlying action, JDI alleged conversion, breach of duty of loyalty, breach of fiduciary duty, violation of the South Carolina Unfair Trade Practices Act (UTPA), misappropriation of trade secrets under SCTSA, civil conspiracy, unjust enrichment/quantum meruit, and tortious interference with contractual relations.

projects and the availability of skilled employees to participate in the potential project. According to JDI, if a competitor knew JDI's wage rates, it could lure away JDI's skilled employees with higher pay and directly impact JDI's ability to participate in the bidding process or work on current projects. JDI alleged it would take years to hire and train plumbers to replace the ones that left. JDI also alleged it had to withdraw from three projects because of its decreased manpower, which resulted in $2.5 million in lost revenue and damaged JDI's reputation.

In support of its motion for a preliminary injunction, JDI submitted affidavits from Locklair and David Dozer, JDI's Executive Vice President, that indicated their belief that the Personnel Documents were trade secrets and confidential information and that Israel used that information to solicit JDI employees to work for PSI. JDI also produced Israel's June 8 email, a log showing which documents were accessed in ShareFile on June 24 on Israel's iPad, and the July 13 email Dobbins sent to Israel's JDI email. Israel submitted Strickland's affidavit—which included Strickland's denial that Israel approached him to leave JDI and work for PSI—and an affidavit of his own in which Israel denied he had a personal copy of the Personnel Documents or was soliciting any employee at JDI to work for PSI. Israel also produced his phone's call history with Locklair for June 22–25 and the June 25 email from Locklair.

Following a hearing, at which no witnesses testified, the circuit court issued an order granting a preliminary injunction based on all four claims. This appeal followed.

## ISSUES ON APPEAL

I.  Did the circuit court err in issuing a preliminary injunction by finding JDI demonstrated a likelihood to succeed on the merits when no facts support the assertion that Israel possessed or misappropriated JDI's trade secret or confidential information?

II. Did the circuit court err in finding JDI demonstrated a likelihood to succeed on the merits when the court relied exclusively on hearsay and speculative statements in affidavits outside the affiants' personal knowledge to find Israel solicited JDI employees?

III. Did the circuit court err by improperly "balancing the equities" between the parties by comparing the alleged harm to each party to support issuing a preliminary injunction?

## STANDARD OF REVIEW

A preliminary injunction "rests within the sound discretion of the trial judge and will not be overturned unless the order is clearly erroneous." *Atwood Agency v. Black*, 374 S.C. 68, 72, 646 S.E.2d 882, 884 (2007). "The facts alleged must be sufficient to support a temporary injunction[,] and the injunction must be reasonably necessary to protect the rights of the moving party." *Id.*

## LAW/ANALYSIS

### I.      Likelihood of Success on the Merits

Israel contends the circuit court erred in finding JDI demonstrated a likelihood of success on the merits because JDI adduced no evidence that Israel possessed or misappropriated any trade secret or other confidential information belonging to JDI. Israel argues that JDI at no point showed Israel copied, downloaded, or otherwise removed the Personnel Documents from the company-issued iPad. We disagree.

"An applicant for a preliminary injunction must allege sufficient facts to state a cause of action for injunction and demonstrate that this relief is reasonably necessary to preserve the rights of the parties during the litigation." *Compton v. S.C. Dep't of Corr.*, 392 S.C. 361, 366, 709 S.E.2d 639, 642 (2011). "To obtain an injunction, a party must demonstrate irreparable harm, a likelihood of success on the merits, and the absence of an adequate remedy at law." *Richland County. v. S.C. Dep't of Revenue*, 422 S.C. 292, 310, 811 S.E.2d 758, 767 (2018) (quoting *Denman v. City of Columbia*, 387 S.C. 131, 140, 691 S.E.2d 465, 470 (2010) (per curiam)). "In evaluating whether a plaintiff is entitled to a preliminary injunction, the court must examine the merits of the underlying case only to the extent necessary to determine whether the plaintiff has made a sufficient prima facie showing of entitlement to relief." *Compton*, 392 S.C. at 367, 709 S.E.2d at 642.

As an initial matter, we note what is—and is not—properly before this court. Israel did not challenge the circuit court's findings on two of the three parts of the preliminary injunction test: irreparable harm if the injunction is not granted and inadequate remedy at law. Israel only contests the circuit court's findings on whether JDI showed a likelihood of success on the merits. Accordingly, we will only review the circuit court's findings related to the likelihood of success on the merits. *See Atl. Coast Builders & Contractors, LLC v. Lewis*, 398 S.C. 323, 329, 730 S.E.2d 282, 285 ("[A]n unappealed ruling, right or wrong, is the law of the case.").

Each of the claims on which JDI sought the preliminary injunction relies on the allegation that Israel possessed or misappropriated a trade secret or other confidential information that belonged to JDI and subsequently used that information to solicit JDI employees to work for PSI. We hold JDI made a sufficient prima facie showing of entitlement to relief.

The filings and evidence presented to the circuit court indicate JDI could succeed in showing that Israel accessed the Personnel Documents and was using the information contained within them to solicit JDI employees. It is uncontested the Personnel Documents were JDI's property. JDI's complaint and Locklair's affidavit provided that JDI had implemented security policies to protect the Personnel Documents from widespread viewing and use. JDI presented a ShareFile activity log reflecting that the Personnel Documents were downloaded onto Israel's company-issued iPad after his phone call with Locklair on June 24. JDI submitted Locklair's affidavit stating Israel had already been informed his resignation was effective immediately at the time he downloaded the Personnel Documents, indicating he did not have permission to access the documents.

JDI also sufficiently alleged facts to support its assertion that the information in the Personnel Documents was confidential and constituted trade secrets. JDI had a policy alerting employees with company-issued iPads that there was sensitive, confidential information on ShareFile. JDI also stated the information in the Personnel Documents was not widely available within the company. With regard to trade secrets, JDI explained the value of the information in the Personnel Documents to its competitive bidding process and stated that the compilation of such information would not be readily ascertainable by the public. *See* S.C. Code Ann. § 39-8-20(5)(a) (2023) (providing that a trade secret can be a compilation of information that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by the public or any other person who can obtain economic value from its disclosure or use, and [] is the subject of efforts that are reasonable under the circumstances to maintain its secrecy").

Further, JDI produced affidavits that stated: (1) management received reports Israel was contacting JDI employees following his departure; (2) a significant portion of its employees in the Plumbing Department resigned from employment shortly after Israel left JDI; and (3) at least some of the employees that left JDI are now employed by PSI, Israel's current employer and JDI's competitor. While we acknowledge there is no direct evidence that Israel used the Personnel Documents

to solicit JDI employees, the circumstantial evidence and facts alleged are sufficient to demonstrate that Israel could have used the Personnel Documents in a manner that was not authorized. *See Atwood Agency*, 374 S.C. at 72, 646 S.E.2d at 884 ("The facts alleged must be sufficient to support a temporary injunction[,] and the injunction must be reasonably necessary to protect the rights of the moving party."). JDI did not need to prove an absolute legal right, only "a fair question to raise as to the existence of such a right." *Williams v. Jones*, 92 S.C. 342, 347, 75 S.E. 705, 710 (1912); *see also Levine v. Spartanburg Reg'l Servs. Dist., Inc.*, 367 S.C. 458, 466, 626 S.E.2d 38, 42 (Ct. App. 2005) (holding a plaintiff seeking a preliminary injunction need not prove an absolute legal right; a plaintiff need only present a "fair question to raise as to the existence of such a right"), *modified on other grounds*, *Poynter Invs., Inc. v. Century Builders of Piedmont, Inc.*, 387 S.C. 583, 694 S.E.2d 15, 17 (2010).

Accordingly, we affirm the circuit court's finding that JDI demonstrated a fair question as to the existence of a legal right and a sufficient prima facie showing of entitlement of relief. *See Williams*, 92 S.C. at 347, 75 S.E. at 710 (holding a party seeking a preliminary injunction need to prove only "a fair question to raise as to the existence of [a legal] right"); *Levine*, 367 S.C. at 465, 626 S.E.2d at 42 (holding a plaintiff seeking a preliminary injunction need not prove an absolute legal right; a plaintiff need only present a "fair question to raise as to the existence of such a right"); *see also Compton*, 392 S.C. at 367, 709 S.E.2d at 642 ("In evaluating whether a plaintiff is entitled to a preliminary injunction, the court must examine the merits of the underlying case only to the extent necessary to determine whether the plaintiff has made a sufficient prima facie showing of entitlement to relief.").

## II.    Hearsay and Speculative Statements

Israel argues the circuit court erred in relying solely on hearsay and speculative statements in affidavits submitted by JDI to find Israel was soliciting JDI employees. We disagree.

Our case law has not explicitly addressed the reliance on hearsay and speculative statements in issuing a preliminary injunction. However, it would be contrary to the purpose of, and the test for, a preliminary injunction to infer from our case law a prohibition against a court's reliance on hearsay or speculative statements.[6]

---

[6] Israel suggests this court use the standard articulated in Rule 56(e), SCRCP, as a guide. The standard in Rule 56(e) cannot be imputed onto affidavits related to a

A preliminary injunction is issued only when necessary to preserve the status quo ante. *Poynter*, 387 S.C. at 586, 694 S.E.2d at 17. Taking into account the exigent circumstances underlying a request for temporary injunctive relief, the test for a preliminary injunction requires only that "[t]he facts *alleged . . .* be sufficient to support a temporary injunction" and that the court consider the underlying merits "*only to the extent necessary* to determine whether there has been a *prima facie* showing to support a temporary injunction." *Atwood Agency*, 374 S.C. at 72, 646 S.E.2d at 884 (emphases added). Given the purpose of a preliminary injunction and the requirement that the facts *alleged* are sufficient to support a prima facie showing, it is appropriate for a circuit court to rely on hearsay and speculative statements when deciding whether a party has met their burden of demonstrating a likelihood of success on the merits. *Cf. Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits."); *G.G. ex rel. Grimm v. Gloucester Cnty. Sch. Bd.*, 822 F.3d 709, 725–26 (4th Cir. 2016), *vacated and remanded on other grounds*, 580 U.S. 1168 (2017) ("Because preliminary injunction proceedings are informal ones designed to prevent irreparable harm before a later trial governed by the full rigor of usual evidentiary standards, district courts may look to, and indeed in appropriate circumstances rely on, hearsay or other inadmissible evidence when deciding whether a preliminary injunction is warranted."); *Asseo v. Pan Am. Grain Co.*, 805 F.2d 23, 26 (1st Cir. 1986) ("Affidavits and other hearsay materials are often received in preliminary injunction proceedings. The dispositive question is not their classification as hearsay but whether, weighing all the attendant factors, including the need for expedition, this

---

motion for a preliminary injunction. Whereas a summary judgment motion seeks an adjudication on the merits of the claim, a preliminary injunction seeks to preserve the status quo ante. *Compare Baird v. Charleston County*, 333 S.C. 519, 529, 511 S.E.2d 69, 74 (1999) ("Summary judgment is an adjudication on the merits of the case[.]"), *with Poynter*, 387 S.C. at 586, 694 S.E.2d at 17 (holding that a preliminary injunction is issued only when necessary to preserve the status quo ante). In weighing motions for preliminary injunctions, the circuit court is explicitly limited in its ability to consider the underlying merits. *See Compton*, 392 S.C. at 367, 709 S.E.2d at 642 ("In evaluating whether a plaintiff is entitled to a preliminary injunction, the court must examine the merits of the underlying case only to the extent necessary to determine whether the plaintiff has made a sufficient prima facie showing of entitlement to relief.").

type of evidence was appropriate given the character and objectives of the injunctive proceeding."); *Commodity Future Trading Comm'n v. IBS, Inc.*, 113 F. Supp. 2d 830, 851 (W.D.N.C. 2000) ("[A]ffidavits are competent evidence and are admissible in a preliminary injunction proceeding. Affidavits are appropriate forms of evidence in such proceedings due to the less formal nature of a preliminary injunction hearing and the need to take action to avoid irreparable injury." (citation omitted)).

Accordingly, we affirm the circuit court's finding that Israel was soliciting JDI employees because the court could rely on the statements made in the affidavits in the record that asserted that Israel was indeed soliciting JDI employees.[7]

## III.    Balancing of Equities Test

Israel argues the circuit court erred by employing the balancing of equities test because it was improper to do so when analyzing a motion for a preliminary injunction. We disagree.

Our supreme court has held,

> [T]he "balancing the equities" requirement is neither necessary nor appropriate in a preliminary injunction case[] where the three requirements (irreparable harm, success on merits, and inadequate remedy at law) are well established and clearly delineate the burden of proof and of persuasion. Moreover, the balancing requirement is

---

[7] Specifically, the affidavits alleged (1) Locklair received reports from four employees that Israel entered JDI jobsites with no legitimate business purpose and solicited employees to leave JDI and work for PSI; (2) two of those four employees resigned from JDI and at least one of the two now works for PSI; (3) Locklair was aware of at least four other employees being contacted by Israel, at least one of whom Israel contacted to solicit to leave JDI's employment; (4) at least ten employees resigned employment in the three weeks following Israel leaving JDI, many of whom were relatively long-term employees; (5) Doser understood most of the employees who left after Israel's departure were solicited and recruited by Israel to work for PSI; (6) Locklair discovered several former JDI employees now worked for PSI when Dobbins sent the July 13 email to Israel's JDI email address; and (7) Strickland told JDI that Israel came to a JDI jobsite to talk to him about leaving JDI's employment.

> subsumed by the irreparable harm and inadequate remedy
> at law components of the three-part test.

*Poynter*, 387 S.C. at 587, 694 S.E.2d at 17. The court further noted, "[T]here is no separate requirement that a judge perform such a balancing before deciding to issue a preliminary injunction." *Id.* at 586, 694 S.E.2d at 17.

Here, the circuit court found,

> Although this [c]ourt does not engage in a balancing test between the irreparable harm that [JDI] would suffer in the absence of injunctive relief versus whatever harm Israel could suffer if the [c]ourt grants injunctive relief, it is appropriate for this [c]ourt, sitting in equity, to consider the impact on Israel. It appears that a grant of the relief [JDI] seeks would have little impact on Israel.

The circuit court also made findings on the three parts of the preliminary injunction test.

While we agree the balancing of the equities test was not necessary, the circuit court's reference to the test and brief analysis of potential harm to Israel does not amount to a reversible error. The *Poynter* court reasoned that the use of the balancing test was unnecessary because it was subsumed by two parts of the three-part test for a preliminary injunction. *See Poynter*, 387 S.C. at 587, 694 S.E.2d at 17 ("Moreover, the balancing requirement is subsumed by the irreparable harm and inadequate remedy at law components of the three-part test."). Here, the circuit court made findings on each part of the test for a preliminary injunction *and* discussed the impact on Israel, rendering any alleged use of the balancing test superfluous. Accordingly, we affirm the circuit court's order. *See Atwood Agency*, 374 S.C. at 72, 646 S.E.2d at 884 ("Temporary injunctive relief rests within the sound discretion of the trial judge and will not be overturned unless the order is clearly erroneous.").

## CONCLUSION

For the foregoing reasons, the circuit court's order is

**AFFIRMED.**

**THOMAS and KONDUROS, JJ., concur.**